SAMUEL, Judge.
These appeals involve the claims of a contractor and a supplier for unpaid balances due on two contracts executed in conjunction with a bridge resurfacing project at Shreveport, Louisiana.
Express Ready-Mix, Inc., the supplier, sued Fremin-Smith Services, Inc., the contractor, and its surety for $5,648.23 plus statutory attorney’s fees, alleging it was not paid for certain materials used in the construction. The contractor and surety defend on the ground that the supplier’s claim, if valid, should be made against the State of Louisiana, owner of the bridge. They reason: The contract with the supplier is tied in with the contractor’s agreement with the State; thus, the amount defendant contractor recovers from the state determines what balance if any is due.
In a third party petition, the contractor claimed the State of Louisiana, Department of Highways, owed a balance of $21,643.20 for 200.4 cubic yards of concrete placed in the structure for which payment was not made. The contract called for payment at the rate of $108 per cubic yard in place but the dispute stems from a disagreement as to how the total cubic yardage was computed. In the State’s answer, it is asserted the contractor was paid fully since the method of measuring volume specified in the contract was applied.
The trial court rendered judgment in favor of both plaintiffs. On the main demand, plaintiff was awarded the full amount of principal and statutory attorney’s fees demanded. On the third party demand, the contractor was awarded $21,643.20 against the State. Appeals have been taken by the State and by the contractor and its surety.
In 1968 the Department of Highways advertised for bids to tear out a deteriorated lightweight concrete deck on the Barksdale Bridge over the Red River and to rebuild the roadway with a heavier concrete. Contractors were given plans and specifications of the original construction, completed in the 1950s, to assist them in preparing their bids. According to the plans, approximately 1,156.86 cubic yards of concrete were needed to install a new deck. Fremin-Smith obtained the job by bidding $108 per cubic yard in place and then verbally agreed to buy concrete from plaintiff at a unit price of $14.50 per cubic yard. There was no determination as to the total amount of material to be delivered.
The supplier was given a batch formula by one of the State laboratories to be used in preparing the concrete for the contractor. Certain minimum standards were set forth and, although it was permissible to vary the quantities of various components in the mixture, the supplier was always required to meet the minimum standards. *428 To insure compliance, a representative of the State Highway Department was assigned to check each batch of cement before it was loaded onto the trucks at plaintiff’s plant. This agent completed state-furnished forms noting: (1) the satisfactory composition of the material loaded; (2) the quantity of material placed on the truck; and (3) the time the truck was loaded.
This was important because concrete in the truck for more than one hour could not be used; a delay beyond this period would affect the strength of the material. When the truck reached the bridge, another state agent inspected the mixture to make sure it met minimum batch formula standards and also noted the time of arrival. According to all witnesses, it is not possible at this second point to check as to quantity.
The placing of a truckload of cement into forms on the bridge is referred to as a pour. When one of the first pours had been completed, J. E. James, the contractor’s superintendent on the job, told one of the State’s representatives the actual yield was less than the plans indicated it should be. He asked the State to make yield tests. Although Hugh Pearson, construction engineer in charge of this job for the Highway Department, was somewhat vague as to when and if James complained about the yield, he did confirm that tests were made and he termed the tests satisfactory. It was not possible for the contractor to stop on the redecking project while tests were conducted because the re-decking was considered an emergency job on a heavy traffic artery requiring completion as soon as possible. Defendant completed the contract on July 31, 1968.
Pearson made the computation on which payment to the contractor was based. He testified he measured only the length of the resurfaced deck to compute total cubic yardage. The depth and width figures were those shown on the 1950 plans and specifications. The contractor contends this is where the error was made because a deflection factor was not taken into consideration. It was explained the original lightweight deck was 6j4 inches thick, but when the new surface was poured, because the weight of the heavier concrete caused the bridge’s steel, supports to shift slightly and realign, the heavier deck had a thickness that was between 14 inch to 1 inch greater than that specified in the plans. To prove deflection occurred, cores were taken from the finished heavyweight concrete deck and it was established that the deflection was as great as 1 inch in various places. Pearson would admit to a possible ]/s inch deflection; but the evidence shows he understated the figure.
Pearson testified a deflection of ]/s inch would account for use of an additional 211/2 yards of concrete over and above the estimate stated in the contract. Apparently it was not possible to measure the depth of the resurfaced bridge accurately. The contractor’s claim for extra yardage is based on the number of cubic yards of concrete delivered to the jobsite.
Based on these facts, we first consider the contract dispute between the contractor and the State. It is the State’s contention that whether there was or was not deflection proven, the contractor agreed to be compensated according to measurements computed as follows:
“805.25 METHOD OF MEASUREMENT. The yardage to be measured shall be the number of cubic yards of concrete of the several classes, complete in place and accepted. In computing the concrete yardage for payment, the dimensions used shall be those shown on the plans or ordered in writing by the engineer. No measurement or other allowance will be made for forms, false-work, cofferdams, pumping or bracing. No measurement or allowance will be made for expansion joint materials and joint fillers or for structural excavation unless otherwise specifically provided in the plans.”
*429 The quoted proviso is one section of a thick booklet entitled “Standard Specifications for Roads and Bridges October 1966” and this entire publication was incorporated in the agreement at issue by reference. There is language in the contract indicating the parties did not agree to be bound by the above method of computation. We quote:
“It is understood by the undersigned that the quantity given in the following itemized proposals are a fair approximation of the amount of work to be done, and that the sum of the products of the approximate quantities multiplied by the unit price bid shall constitute gross sum bid, . . .” (Emphasis ours).
Another factor we consider in ascertaining the intent of the parties from the wording of the agreement is the fact that the project was not new construction. It was a repair job ordered by the State with no new plans drawn. The material used in the decking was different, i. e., heavier concrete was substituted for lightweight concrete. Thus, had new plans been drafted, the specifications would have changed. As we read Section 805.25 together with the verbage about estimates, we do not think it was intended to apply to this specific repair contract, particularly since the defendant contractor constructed a concrete decking substantially different than that called for in the original plans. Cubic yardage or total volume is computed by multiplying length by width by depth. We find it unlikely that a contractor would accept length and width figures stated in old plans to compute the volume of concrete placed in the bridge, especially when he was not using the same materials outlined in the original plans. Further it is apparent from the testimony and other sections of the contract that the cubic yardage detailed in the plan was treated as an estimate only.
Thus, we apply the rule of LSA-C.C. Art. 1955 as follows:
“All clauses of agreements are interpreted the one by the other, giving to each the sense that results from the entire act.” LSA-C.C. Art. 19SS.
We can only conclude the agreement, made on a unit price basis, requires the State to pay for each cubic yard placed in the bridge deck.
 The contractor computes the total volume poured by proving the quantities of concrete delivered to the job. Considering the closely supervised loading and pouring operations, where state agents actually counted the quantity of cement loaded, record of cubic yardage delivered to the jobsite is sufficient to support the contractor’s claim. It was uniformly testified that the concrete clinging to the truck after unloading was minimal. The possibility that cement loaded at the plant was partially diverted to another site before reaching the bridge is largely negated by the one hour pouring deadline. No actual measurement of width and depth of the deck were made. One of the state witnesses who attempted to measure deflection described the difficulty of accurately measuring deflection while suspended from a bridge above the river.
We conclude the contractor’s evidence supports its claim. However, we note the testimony of the contractor’s superintendent states it was not paid for 196 cubic yards, as opposed to the 200.4 cubic yards alleged in the pleadings. The judgment should be amended to allow recovery only for that yardage for which James stated his company was not paid.
Turning to the contractor-supplier agreement, we consider defendant’s argument the supplier’s recovery is contingent on the contractor’s recovery. The contractor relics on this language in its purchase order requiring the supplier to :
“Furnish all concrete for (the) Red River Bridge, Shreveport, La. in complete accordance with contract plans and current Louisiana Highway Specifications.”
*430 This quoted provision simply obligates the supplier to meet batch formula requirements furnished by the State, and does not tie into measurement methods binding in some instances on contractors. The supplier proved an open-end verbal agreement to deliver concrete at a unit price per cubic yard. From its records it established it had not been paid the full amount claimed in its petition. Thus, the award to it, independent of the outcome of the third party action, was proper.
The contractor and surety further challenge an award of 10% attorney fees to the supplier. This complaint is without merit. The award was made under the authority of LSA-R.S. 38:2246 which permits a claimant to recover attorney’s fees if he: (1) has not received payment within thirty days after making amicable demand on the principal and surety; and (2) in a suit against them recovers the full amount of its recorded or sworn claim; and LSA-R.S. 9:3902 which provides a creditor is entitled to recover attorney’s fees when he has employed an attorney, has made written amicable demand on the principal and surety and thirty days have elapsed from receipt thereof without payment being made, and the full amount claimed in the demand is recovered. The supplier has met these requisites.
One further matter requires our consideration. The trial court judgment assessed all costs incurred in the third party action against the third party defendant, State of Louisiana, Department of Highways. However, as provided by LSA-R.S. 13:4521, the State cannot be required to pay court costs except such as are stenographers’ costs for taking testimony. We amend the judgment to conform with the statute.
For the reasons assigned, the judgment appealed from is amended so as to reduce the award in favor of Fremin-Smith Services, Inc. and against the State of Louisiana, Department of Highways, from $21,643.20 to $21,168.00 and so as to require the State of Louisiana, Department of Highways, to pay only those trial court costs which are stenographers’ costs for taking testimony in the third party action. As thus amended, and in all other respects, the judgment appealed from is affirmed; all costs in this court to be paid by Frem-in-Smith Services, Inc.
Amended and affirmed.